IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Respondent : | |
| : | Criminal No. 1:08-CR-104 |
| v. : | |
| : | (Chief Judge Kane) |
| KEVIN JUDAS COLEMAN, SR. : | |
| Petitioner : | |

## MEMORANDUM

Pending before the Court is Petitioner Kevin Judas Coleman, Sr.'s ("Coleman") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. No. 43.) The petition is accompanied by an application to proceed in forma pauperis. (Doc. No. 55.) For the reasons that follow, Coleman will be granted in forma pauperis status for the sole purpose of the filing of this petition, and his § 2255 motion will be denied.

## I. BACKGROUND

On March 12, 2008, the Government filed a criminal information ("the Information") against Coleman, charging him with impeding the due administration of justice in violation of 18 U.S.C. § 1503. (Doc. No. 1 at 6.) The charge against Coleman, who at the time was a member of the Pennsylvania State Police, alleged that he passed information to pimps and prostitutes who were the subject of an ongoing federal investigation of a nationwide prostitution ring that victimized minors and young adult women. (Id. ¶¶ 1-3.) The investigation involved numerous pimps, primarily from Toledo, Ohio, who were operating a nationwide prostitution ring out of the Gables Truck Stop in Harrisburg, Pennsylvania, one of the places where Coleman was to conduct anti-prostitution patrols. (Id. ¶ 4.) In exchange for sexual favors from women being

1

prostituted by the pimps, Coleman would warn the women and their pimps about undercover law enforcement activity, law enforcement wiretaps, and law enforcement arrests, and would provide them with his work schedule so they would know when they could work without fear of law enforcement activity. (Id. ¶ 5, 14.) The charge also alleged that, in exchange for sexual favors, Coleman failed to arrest certain women who were being prostituted at the Gables Truck Stop and would selectively arrest women who were being prostituted by pimps who were rivals of the pimp who was supplying Coleman with women for sexual favors. (Id. ¶¶ 8-13.)

Coleman pleaded guilty to the Information pursuant to a plea agreement with the Government. (Doc. No. 3.) The plea agreement provided, inter alia, that the United States would bring no further charges against Coleman and that he agreed to waive his right to appeal the conviction and sentence imposed.[1] (Id. at 2, 11.) The agreement contained an

---

[1] Page 11, Paragraph 17 of the plea agreement states:

> Appeal Waiver. The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the conviction and sentence imposed. Acknowledging all of this, the defendant knowingly waives the right to appeal any conviction and sentence, including a sentence imposed within the statutory maximum, on any and all grounds set forth in Title 18, United states Code, Section 2742 or any other grounds, constitutional or non-constitutional, including the manner in which that sentence was determined in light of United States v. Booker, 125 S. Ct. 738 (2005). The defendant also waives the defendant's right to challenge any conviction or sentence or the manner in which the sentence was determined in any collateral proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The defendant further acknowledges that this appeal waiver is binding only upon the defendant, and that the United States retains its right to appeal in this case.

(Doc. 3 at 11.)

2

acknowledgment signed by Coleman indicating that he had "read the agreement and carefully reviewed every part of it" with counsel, and that he "fully underst[ood] it" and "voluntarily agree[d] to it." (Id. at 14.) On April 1, 2008, Coleman appeared before the Court and entered his his guilty plea. After the Court engaged Coleman in a colloquy to ensure that he was entering his plea knowingly, voluntarily, and intelligently, the Court accepted the plea. (Doc. No. 15 at 5-23.) The Court held sentencing hearings on October 21, 2008, and November 21, 2008. At these hearings, Coleman, through his counsel, raised several objections to the presentencing report ("PSR") and the Court heard argument and testimony on the objections from both sides. (Sentencing Tr., October 21, 2008, at 3-39; Sentencing Tr., November 21, 2008, at 44-98.) At the November 21, 2008 hearing, the Court ruled on Coleman's objections and sentenced him to 97 months imprisonment. (Sentencing Tr., November 21, 2008, at 99-100, 111.)

On December 15, 2009, Coleman filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Coleman filed a notice of election on January 26, 2010, choosing to proceed with his § 2255 motion. (Doc. No. 47.) On March 19, 2010, the United States filed a brief in opposition to Coleman's motion. (Doc. No. 53.) Coleman filed a motion to proceed in forma pauperis on May 11, 2010. (Doc. No. 55.) The Court granted Coleman an extension of time to file a reply brief (Doc. No. 56), but no reply brief was filed. The motion is now ripe for disposition.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct the prisoner's sentence on the grounds that:

3

> The sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. In evaluating a § 2255 motion, "the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).

Morever, the decision whether to hold a hearing when a prisoner moves to vacate a judgment under § 2255 is left to the sound discretion of the district court. Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075. "[B]ald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing." Mayberry v. Petsock, 821 F.2d 179, 185 (3d Cir. 1987).

### III. DISCUSSION

In his motion, Coleman argues that he was denied due process of law because the Court sentenced him on the basis of inaccurate information. (Doc. No. 43 at 5.) Next, Coleman argues that he is actually innocent of violating 18 U.S.C. § 1503 and therefore his incarceration violates due process. (Id. at 8.) Coleman also submits that he received ineffective assistance of counsel

4

when his attorney failed to negotiate a limited right to appeal the Court's factual findings that impacted the sentence. (Id. at 6.) Finally, Coleman asserts that he received ineffective assistance of counsel when his attorney advised him to waive indictment and enter a plea of guilty to the information. (Id. at 9.) The Court will address each of these contentions in turn.

### A. Coleman's Waiver of Right to Appeal or File a § 2255 Motion

The Court must first consider whether Coleman has waived his right to bring a collateral attack, such as a § 2255 motion. See United States v. Mabry, 536 F.3d 231, 236-30 (3d Cir. 2008). The Government argues that Coleman's petition is barred by the appellate-waiver provision contained his plea agreement. (Doc No. 53 at 8-11.) Coleman responds that he did not knowingly and voluntarily agree to the waiver because during the colloquy at his guilty plea hearing the Court failed to adequately inform him of the waiver's terms and to ensure his understanding of those terms as required by Federal Rule of Civil Procedure 11(b)(1)(N). (Doc No. 42 at 3-5.)

The Third Circuit Court of Appeals has found that "waivers of appeals, if entered into knowingly and voluntarily, are valid." United States v. Khattak, 273 F.3d 557, 562 (2001). While a defendant bears the burden of presenting an argument that would render the waiver unknowing or involuntary, the Court has an affirmative duty to examine the knowing and voluntary nature of the waiver and to assure itself that the enforcement works no miscarriage of justice. Id. at 237-38. Whether a waiver is knowing and voluntary depends on the sentencing judge's compliance with Federal Rule of Criminal Procedure 11. Khattak, 273 F.3d at 563. Under Federal Rule of Criminal Procedure 11(b), the Court must "inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving

5

the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

At the plea hearing, Coleman testified that: he signed the plea agreement (Guilty Pl. Tr. 11); he had signed the agreement willingly (id.); he had "full opportunity to discuss the charges with [plea counsel]" (id. at 6); he was satisfied with the representation given by plea counsel (id.); and he understood the finality of the agreement (id. at 18). Moreover, the Assistant United States Attorney highlighted the fact that Coleman agreed "to waive his right to appeal as specifically defined in [the] plea agreement." (Id. at 4.) The Court does not doubt that Coleman entered into the plea agreement knowingly and voluntarily. However, the record is not so clear as to whether Coleman knowingly and voluntarily waived his appeal rights. The Court did not personally discuss the appellate waiver with Coleman. Additionally, the Third Circuit has held that a district court may not rely on the Government to inform the defendant of the terms of the appellate waiver. See United States v. Goodson, 544 F.3d 529, 540 (3d Cir. 2008). Even if the Court were permitted to rely on the Government to inform Coleman of his waiver of appellate rights, the Government's brief mention of Coleman's waiver of his right to appeal "as specifically defined in [the] plea agreement" was insufficient. See United States v. Corso, 549 F.3d 921, 929-31 (3d Cir. 2008) (finding that the prosecutor's "cursory aside" regarding the appellate waiver was "plainly insufficient"). The Court notes that Coleman did sign an acknowledgment in the plea agreement, confirming that he had read the agreement and discussed it with counsel. (Doc. No. 3 at 14.) However, "[t]he point of Rule 11(b)(1)(N) is that a signed piece of paper is not enough." Corso, 549 F.3d at 930 (quoting United States v. Sura, 511 F.3d 654, 662 (7th Cir. 2007)).

The record of the plea hearing is unfortunately unclear as to Coleman's knowledge of the

ramifications of the appellate waiver. For these reasons, the Court finds that Coleman did not effect a valid waiver of his right to appeal or file a § 2255 motion because any waiver was unknowing and involuntary. Thus, the waiver will be set aside and the Court will proceed to the merits of Coleman's § 2255 motion.

> B. **Due Process Rights Claim**

Coleman argues that his sentence was imposed in violation of his due process rights because the Court relied on inaccurate information in enhancing his sentence. It is true that due process is violated if a sentence is based on materially false information. See Townsend v. Burke, 334 U.S. 736 (1948). The Third Circuit has noted that "as a matter of due process, factual matters may be considered as a basis for sentence only if they have some minimal indicium of reliability beyond mere allegation." United States v. Baylin, 696 F.2d 1030, 1040 (3d Cir. 1982). Facts considered at sentencing must generally be proved by a preponderance of the evidence. United States v. Watts, 519 U.S. 148, 156 (1997). As a result, "application of the preponderance standard at sentencing generally satisfies due process." Id. In the Third Circuit, "the test to evaluate whether a sentence has been based on criteria violative of a defendant's due process right is two-fold: (1) has misinformation of a constitutional magnitude been given to the district court; and (2) has that misinformation been given specific consideration by the sentencing judge?" United States v. Matthews, 773 F.2d 48, 51 (3d Cir. 1985). Under the first prong of the Matthews test, "a defendant must show that he was denied an opportunity to address allegedly false information presented to the sentencing judge." See id.; United States v. Barnhart, 980

F.2d 219, 226 (3d Cir. 1992).

The Court finds that Coleman's due process rights were not violated. The factual matters considered as a basis for Coleman's sentence far exceed the requirement that they contain a minimum indicia of reliability beyond mere allegation. The Court enhanced Coleman's sentence by four points based on its finding that Coleman knew or should have known of (1) the involvement of minors and (2) the application of violence by the co-conspirators (the pimps) in the underlying offense. (Sentencing Tr., November 21, 2008, at 98-100.) In his petition, Coleman asserts that he was unaware of the involvement of any minors in prostitution activities and that he never offered to be Melissa Jacobs' pimp.[2] (Doc. No. 43 at 5.) Coleman, through his counsel at the sentencing hearing, objected to these very issues as they were included in the PSR. (Sentencing Tr., October 21, 2008, at 3-4.) After hearing extended testimony and argument from both sides on these objections, the Court stated:

> I believe that the Government has a burden of producing evidence sufficient to convince the Court by a preponderance of the evidence that the defendant knew or should have known of the involvement of minors and of the application of violence by the co-conspirators in the underlying offense. I am convinced that the defendant knew or should have known based on all of the evidence of record here. . . . Based on the information before the Court, I find that the defendant was aware of the application of the violence against Melissa Jacobs and others, and that based on the information Jacobs provided and on the information provided by other members of the state police, he certainly knew of the involvement of minors.

(Sentencing Tr., November 21, 2008, at 99.)

---

[2] At sentencing, in support of its argument that Coleman knew or should have known of the application of violence, the Government introduced part of an FBI interview with Melissa Jacobs from November 29, 2007. FBI Special Agent Lynch testified that, according to Jacobs, Coleman told her, "If you're going to be paying somebody, why don't you be paying me, at least I won't hit you." (Sentencing Tr., November 21, 2008, at 62.)

8

Coleman has failed to show that misinformation of a constitutional magnitude was provided to the Court at sentencing. See Matthews 773 F.3d at 51. Additionally, Coleman was afforded the due process safeguards provided to him by Federal Rule of Criminal Procedure 32.[3] Coleman was given the opportunity to challenge the allegedly false information, the Court heard extensive testimony on the objections, and ultimately the Court found that the Government proved by a preponderance of the evidence that Coleman knew or should have known of the involvement of minors and the application of violence. Accordingly, Coleman's due process argument on these points fail.

Coleman also argues that the Court violated due process when it enhanced his sentence on the basis of inaccurate information regarding his relationship with Blair Gillespie, one of the prostitutes in the case. (Doc. No. 43 at 5.) Specifically, Coleman asserts that he "did not take money from one Blair Gillespie after arresting her, nor did he offer her money in exchange for oral sex "and "[i]n spite of the fact that [he] was guiltless in these matters, nevertheless his sentence was enhanced." (Id.) Again, Coleman's argument fails the first prong of the Matthews test. These facts were not challenged by Coleman at sentencing although he had ample opportunity to do so. Nothing precluded Coleman from disputing this allegedly inaccurate information. Accordingly, the Court finds that Coleman's due process rights were not violated.[4]

---

[3] Federal Rule of Criminal Procedure 32(i)(3)(B) states that a court "must – for any disputed portion of the presentence report or other controverted matter – rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."

[4] The Court also notes that nothing in the record shows that the Court relied on or specifically considered these facts in enhancing Coleman's sentence. Thus, Coleman's argument also fails the second prong of the Matthews test.

9

The majority of Coleman's remaining due process arguments relate to information that he admitted to at his plea hearing. Coleman argues that he "did not provide information to a Derrick Maes," "did not target other pimps and prostitutes for arrest at the request of Mr. Maes," "was not involved sexually with Melissa Jacobs," and did not warn Maes of the presence of law enforcement at the truck stop. (Id.) At Coleman's plea hearing, the Government recited the factual basis for the guilty plea. This factual basis included, inter alia:

> Prior to and during the course of the investigation, Mr. Coleman, in exchange for sexual favors from young women being prostituted by the Toledo pimps, would warn those involved in prostitution about undercover law enforcement activity, law enforcement wiretaps, and law enforcement arrest sweeps at Gables Truck Stop.
>
> Further, under color of the authority of his position as a member of the Pennsylvania State Police, Mr. Coleman took money from young women being prostituted at the Gables Truck Stop, those women who were being taken into custody.
>
> As the direct result of Mr. Coleman's actions in warning prostitutes and pimps of undercover operations, the defendant corruptly impeded the due administration of justice. Now, by "due administration of justice," I am specifically referring to the following acts: Mr. Coleman engaged in an arrangement with a pimp [Derrick Maes] through his chief prostitute [Melissa Jacobs][5] whereby Mr. Coleman would prevent the prostitute's detection and arrest and provide them information concerning ongoing law enforcement investigations and activities in exchange for sexual favors.
>
> While working in the anti-prostitution patrol as a state trooper, Mr. Coleman, in exchange for sexual favors, repeatedly failed to arrest certain women who were being prostituted at the Gables Truck Stop. Mr. Coleman would provide confidential information and operational law enforcement information to a particular pimp [Derrick Maes] . . . and the women who were being prostituted by that pimp, including

---

[5] Following this recitation, the Government confirmed that the pimp referred to was Derrick Maes and the prostitute referred to was Melissa Jacobs. (Plea. Tr. at 21.) Coleman agreed that this was correct. (Id. at 21-22.)

10

> the defendant's work schedules, anticipated arrests, raids, and the presence of law enforcement at the Gables Truck Stop.
>
> Mr. Coleman selectively arrested women who were being prostituted by pimps who were rivals of the pimp who was supplying him with a woman [Melissa Jacobs] for sexual purposes in order to give a competitive advantage to that pimp.
>
> Mr. Coleman would inform the pimp and his prostitutes of the presence of federal law enforcement agents conducting investigation into interstate prostitution at the Gables Truck Stop, including warnings about wiretaps on their cellular phones.

(Plea Tr. at 18-21.) The Court then asked Coleman if these were the true facts of the case, and Coleman responded, under oath, "Yes ma'am." (Id. at 21.) Coleman further indicated that he did not wish to dispute or correct the Government's statements for the record. (Id.) Coleman's admission of these facts is sufficient indicia of reliability to support their accuracy, and he has provided no reason to contest his sworn admission. Indeed, at the sentencing hearing, the Court correctly noted that "certainly as to those things that he admitted while entering a guilty plea, I'm not going to have any trouble accepting them as facts. . . . So anything that he's admitted, it's not going to be contested or in dispute here." (Sentencing Tr., October 21, 2008, at 40.) Accordingly, this information was properly considered by the Court at sentencing under a preponderance of the evidence standard and Coleman's due process rights were not violated.

Finally, Coleman argues that the Court violated his due process rights when it "enhanced [his sentence] for taking money from prostitutes in exchange for not arresting them. This was not true. . . ." (Id.) The Court is unclear as to what Coleman is referring. To the extent that Coleman is objecting to the allegation in the Information that he "took money from young women being prostituted at the Gables Truck Stop into custody" (Doc. No. 1 ¶ 6), this fact was part of the factual basis for the plea that Coleman entered into and was read into the record at his

plea hearing (Plea Tr. at 19). As stated above, Coleman's sworn admission to this fact is sufficient indicia of its reliability and was properly considered by the Court at sentencing. Coleman's claim also fails if he is arguing that this allegedly inaccurate information was included in the PSR and improperly considered by the Court. Coleman fails to satisfy the first prong of the Matthews test because he cannot show that he was denied the opportunity to make this objection. Matthews, 773 F.2d at 51. Coleman was given ample opportunity to make objections and did indeed object to parts of the PSR. His failure to object to this allegedly inaccurate information does not constitute a denial of due process.

### C. Ineffective Assistance of Counsel

Coleman asserts two arguments that he received ineffective assistance of counsel: (1) counsel was ineffective in failing to negotiate a limited right to appeal the Court's factual findings at sentencing that impacted his sentence and (2) counsel was ineffective in advising Coleman to plead guilty because Coleman is innocent of obstructing justice in violation of 18 U.S.C. § 1503. (Doc. No. 43 at 6, 9.)

To assess whether Coleman's counsel was constitutionally ineffective, the Court applies the standard set out by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, "a criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance." Booth, 432 F.3d at 546. The first prong requires that a petitioner identify counsel's challenged acts or omissions and show that counsel's representation fell below an objective standard of reasonableness. See United States v. Lilly, 536 F.3d 190, 196 (3d Cir.

2008) (citing Strickland, 466 U.S. at 688). Judicial scrutiny is highly deferential under the first prong, and courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Booth, 432 F.3d at 546 (quoting Strickland, 466 U.S. at 688-89)). To establish prejudice for the second prong in a guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). When evaluating a claim of ineffectiveness under Strickland, the Court may consider the prejudice prong before examining the performance of counsel prong "because this course of action is less burdensome to defense counsel." Lilly, 536 F.3d at 196 (quoting Booth, 432 F.3d at 546)).

The Court finds that Coleman cannot satisfy the prejudice prong of the Strickland test on either of his ineffective assistance of counsel claims. In the Third Circuit, a defendant "must make more than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir. 1995). Coleman does not even make the argument that but for his counsel's alleged errors he would have pleaded not guilty and gone to trial. This is not surprising given the overwhelming evidence of Coleman's guilt. The Third Circuit has held that when the record is "replete with evidence of petitioner's guilt," a defendant is unable to show that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989). This is certainly the case here. Coleman participated in interviews with the FBI on December 20, 2007, and January 24, 2008. (Doc. Nos. 53-2, Exs. B, C.) During the January 24, 2008, interview Coleman admitted to engaging in sexual activity with prostitutes

13

who were the subjects of the federal investigation (id., Ex. B at 4, 11, 14, 18), he acknowledged that he had helped Melissa Jacobs and another prostitute evade arrest (id., Ex, B at 6), and he admitted to engaging in extended telephone conversations with women being prostituted and with their pimps (id., Ex. B at 8-10, 15). Further, at the sentencing hearings, the Court heard extensive testimony from Special Agent Lynch who read into the record the testimony of Melissa Jacobs. This testimony recounted the nature of Jacobs' relationship with Coleman and how he provided information to her and her pimp, Derrick Maes. (Sentencing Tr., October 21, 2008, at 7-10, 26, 29-30; Sentencing Tr., November 21, 2008, at 61-62, 89.) Special Agent Lynch also read into the record numerous transcripts of wiretapped telephone conversations between Maes and Jacobs, and a transcript of a conversation between Maes and another pimp named Franklin Robinson. These transcripts reveal, at length, Coleman's actions that impeded and obstructed the federal investigation. (Sentencing Tr., November 21, 2008, at 65-81.)

Given the Government's evidence against him, Coleman is unable to show that there is a reasonable probability that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial. See Nino, 878 F.2d at 105 (finding no prejudice because "petitioner would have pled guilty anyway, or, had he not done so, been found guilty after trial"). Because the Court cannot conclude that Coleman was prejudiced by his counsel's alleged errors, his ineffective assistance of counsel claims must fail.[6]

---

[6] The Court notes that Coleman's claim that he received ineffective assistance of counsel when his counsel advised him to plead guilty also fails the first prong of the Strickland test. Originally, Coleman was to be indicted for conspiracy to promote interstate prostitution in violation of 18 U.S.C. § 1942(a)(3); to engage in extortion affecting interstate commerce in violation of 18 U.S.C. § 1951(a); and to obstruct justice in violation of 18 U.S.C. § 1503, all in violation of 18 U.S.C. § 371. (Doc. No. 53 at 7.) In exchange for pleading guilty to violating § 1503, Coleman received the benefit of the Government's recommendation of acceptance of

D.   **Actual Innocence**

Coleman next argues that he is actually innocent of violating § 1503 and thus his incarceration is in violation of his due process rights. (Doc. No. 43 at 8.) Coleman's claim is properly characterized as a substantive, not procedural, claim of actual innocence.[7] In Herrera v. Collins, 506 U.S. 390, 417-419 (1993), the Supreme Court held that even if a substantive actual innocence claim is cognizable on federal habeas review, the petitioner's showing of actual innocence was not strong enough to entitle him to federal habeas relief. In Herrera, the petitioner advanced his claim of innocence in support of a substantive constitutional claim, that is, that the execution of an innocent person would violate the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Id. at 398. To demonstrate his actual innocence, the petitioner sought to offer newly discovered evidence in the form of affidavits. Id. at 400. The Supreme Court began by stating that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation in the underlying state criminal proceeding." Id. at 400. Thus, a freestanding claim of actual innocence is not itself a constitutional claim cognizable on federal

---

responsibility and the Government's promise not to bring further charges against him. (Id.) In light of the Government's overwhelming evidence against Coleman, the Court cannot say that counsel's advice to plead guilty to a single count of obstruction of justice in violation of § 1503 fell below an objective standard of reasonableness.

[7] In Schlup v. Delo, 523 U.S. 298, 314-17 (1995), the Supreme Court explained the difference between a procedural actual innocence claim, which may allow a petitioner to overcome procedural bars that would otherwise preclude review of his underlying constitutional claims, and a substantive actual innocence claim like that of the petitioner in Herrera, which is "itself a constitutional claim." Coleman's claims are not procedurally defaulted and thus his actual innocence claim is not procedural in nature. Rather, Coleman makes a freestanding substantive actual innocence claim that would itself provide a basis for relief.

habeas review. Id. at 404. The Supreme Court explained that this rule is "grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." Id. The Supreme Court went on to note one exception to this rule: a claim of actual innocence may serve as a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Id. at 404-405. This exception, called the fundamental miscarriage of justice exception, is available where the petitioner supplements his procedurally-barred constitutional claim "with a colorable showing of actual innocence." Id. at 404. This exception was inapplicable to the petitioner in Herrera because he was not seeking "excusal of a procedural error . . . but rather argue[d] that he [was] entitled to habeas relief because newly discovered evidence show[ed] that his conviction [was] factually incorrect." Id. The Court emphasized that "we have never held that [the exception] extends to freestanding claims of actual innocence." Id. at 404-405.

Despite the Supreme Court's review of its habeas jurisprudence treating freestanding claims of actual innocence as not cognizable on federal habeas review, it "assume[d], for the sake of argument in deciding [Herrera's] case, that in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional." Id. at 417. While the Supreme Court did not establish the level of proof that would be required for a substantive claim of actual innocence in a capital case, it stated that the standard would be "extraordinarily high." Id.

As a preliminary matter, the Court finds that Coleman has failed to show an independent constitutional violation in the underlying criminal proceeding. As set forth in Parts II.B and II.C, supra, Coleman's due process rights were not violated at sentencing and he did not receive

16

ineffective assistance of counsel. Accordingly, his claim of actual innocence absent an underlying constitutional violation in the criminal proceeding is not a cognizable claim for relief on federal habeas review. Herrera, 506 U.S. at 400. Further, like the petitioner in Herrera, Coleman is not arguing actual innocence in order to excuse procedural error. Therefore, the miscarriage of justice exception is inapplicable.

The Third Circuit has not yet reached the issue of whether a freestanding actual innocence claim, not linked to an underlying constitutional violation, is subject to federal habeas review in non-capital cases. Indeed, the Supreme Court has failed to answer the question left open in Herrera of whether a habeas petitioner may bring a freestanding claim of actual innocence. See House v. Bell, 547 U.S. 518, 554-55 (2006) ("House urges the Court to answer the question left open in Herrera and hold not only that freestanding innocence claims are possible but also that he has established one. We decline to resolve this issue. We conclude here, much as in Herrera, that whatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it."). In light of the absence of any clearly established Supreme Court or Third Circuit precedent recognizing freestanding claims of actual innocence in non-capital cases on federal habeas review, the Court concludes that Coleman has not established a proper basis for federal habeas relief.[8]

---

[8] Several district courts in this Circuit have similarly held that, in non-capital cases, substantive actual innocence claims are not cognizable absent an independent constitutional violation in the underlying proceeding. See, e.g. Ortiz-Martinez v. United States, No. 09-4698, 2010 WL 3909326 at *4 (D.N.J. Jun. 24, 2010); Allen v. Chamberlain, No. 08-2772, 2009 WL 413083 at *10 (E.D. Pa. Feb. 18, 2009); Woodward v. Tennis, No. 07-225, 2009 WL 1858237 at *9 (W.D. Pa. June 29, 2009); Abdullah v. Warden Sci Dallas, No. 06-3885, 2007 WL 7057786 at * 7 (E.D. Pa. Mar. 27, 2007); Lambert v. Blackwell, No. 01-CV-2511, 2003 WL 1718511 at *34 (E.D. Pa. Apr. 1, 2003). Cf. Wright v. Smeal, No. 08-2073, 2009 WL 5033967 at *9-10 (E.D. Pa. Dec. 23, 2009) (addressing petitioner's freestanding actual innocence claim in a non-capital

Even if the Court were to assume that a freestanding actual innocence claim is cognizable on federal habeas review in non-capital cases, Coleman has failed to meet the "extraordinarily high" burden of proving actual innocence contemplated by the Supreme Court in Herrera. In fact, Coleman does not argue that there is any newly discovered evidence that negates his guilt. Instead, he simply asserts that he is innocent because his actions did not violate § 1503. (Doc. No. 43 at 8.) The Court agrees with the Government that Coleman's admitted acts of warning the pimps about law enforcement activity, failing to arrest certain prostitutes, and sexual involvement with the targets of the grand jury investigation clearly "impeded the due administration of justice" in violation of § 1503. It follows that Coleman has not met the Herrera standard of proving actual innocence on a freestanding actual innocence claim. Accordingly, even if Coleman's actual innocence claim is cognizable on federal habeas review, his claim is without merit.

### E. CERTIFICATE OF APPEALABILITY

In proceedings brought under 28 U.S.C. § 2255, an applicant cannot appeal to the circuit court unless a certificate of appealability ("COA") has been issued. Under 28 U.S.C. § 2253(c)(2), a court may not issue a COA unless "the applicant has made a substantial showing of the denial of a constitutional right." In other words, a COA should not issue unless "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not disagree with the Court's assessment of Coleman's claims. A COA will not issue in this case.

---

case on the merits).

## IV. CONCLUSION

The Court concludes that Coleman has failed to state any basis for relief under 28 U.S.C. § 2255. A review of the record flatly contradicts Coleman's claim that he was denied due process at sentencing. Further, Coleman's ineffective assistance of counsel claims fail because he cannot establish any prejudice suffered as a result of the alleged errors. Finally, Coleman's actual innocence claim is not cognizable by the Court. Even if his actual innocence claim was reviewable, Coleman does not meet the burden of proving actual innocence. In sum, Coleman's claims must be rejected as factually and legally unsupportable. Whether to grant an evidentiary hearing is committed to the sound discretion of the Court. Forte, 865 F.2d at 62. The record in this matter conclusively indicates that Coleman is not entitled to relief. As a result, the Court finds that no evidentiary hearing is required. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| Respondent : | |
| : | **Criminal No. 1:08-CR-104** |
| **v.** : | |
| : | **(Chief Judge Kane)** |
| **KEVIN JUDAS COLEMAN, SR.,** : | |
| Petitioner : | |

## ORDER

**NOW**, on this 9th day of December 2010, upon consideration of Defendant Kevin Judas Coleman's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 43), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1. The motion for leave to proceed in forma pauperis (Doc. No. 55) is **GRANTED** for the sole purpose of filing the petition.

2. The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 (Doc. No. 43) is **DENIED**.

3. A certificate of appealability **SHALL NOT ISSUE**.

4. The Clerk of Court is directed to close the case.

                                            S/ Yvette Kane
                                            Yvette Kane, Chief Judge
                                            United States District Court
                                            Middle District of Pennsylvania